IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KATENA BROWN,

    Plaintiff,

vs.                                          CASE NO. CV-02-J-2633-S

GUARDSMARK, INC.,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is defendant Guardsmark, Inc.'s ("Guardsmark") motion for summary judgment (doc. 49), to which the plaintiff filed an objection (doc. 50) and an amendment to said objection (doc. 51).[1]

### I. Factual Background

The plaintiff sued Site Service and Guardsmark for violations of 42 U.S.C. § 1981 and state law defamation (Count I).

In the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff began working for Site Service as a janitor in January, 2001. Plaintiff depo. at 31-32. She was assigned to clean various floors of the BellSouth building in downtown Birmingham. Plaintiff depo. at 40. The plaintiff worked from four to eight p.m. or five to nine p.m. Plaintiff depo. at 42. During those same hours,

---

[1] The plaintiff also sued Site Service, her employer, in this action. The plaintiff and Site Service have since settled her claims against it, leaving Guardsmark as the sole defendant.



security for the BellSouth building was provided by defendant Guardsmark. In March, 2001, the plaintiff was informed by co-employee Arthur McGee that a rumor was circulating that they were seen engaged in oral sex on a surveillance camera. Plaintiff depo. at 55-56, 63-65; Complaint, ¶ 11. The plaintiff denies any such event ever occurred. Nelson depo. at 96.

Guardsmark employee Winston is credited with having "viewed" this event on the security tape, and thereafter reported the incident to her supervisor, Doug Rice. Nelson depo. at 84, 87; Complaint, ¶ 12. Guardsmark thereafter conducted an investigation as to the truth of the matter. Plaintiff depo. at 38, 71. The plaintiff denies such an event ever occurred. Complaint, ¶ 21; Nelson depo. at 96. She stated that Guardsmark conducted an investigation to find out how the rumor got started as well as to "cover up whatever it was." Plaintiff depo. at 72, 75-76.

The plaintiff complains only that the manner of the investigation was such that Guardsmark assumed the rumor was true, placing her in a defensive position. Plaintiff's depo. at 58-59, 72. As a result of the allegations, the plaintiff missed three days form work and received a prescription for Lorazepam from an emergency room. Plaintiff depo. at 78-79, 83-85. The plaintiff also alleges that either the rumor or Guardsmark's investigation contributed to her termination from Site Services on April 3, 2001. Plaintiff depo. at 26, 31, 33, 36-37.

Although Site Service did not investigate the allegation, supervisors were aware of it. Nelson depo. at 78. James Nelson, one of those supervisors, stated he was told by Doug Rice, a Guardsmark supervisor, that Winston was the only person to have allegedly seen the incident on tape. Nelson depo. at 84. Nelson was also informed that Winston told several people about what she claimed to have witnessed. Nelson depo. at 84, 89; affidavit of Osborne, ¶ 5.[2] Other employees of Site Service reported to plaintiff that they had heard similar allegations about her. Complaint, ¶¶ 14, 15, 19; plaintiff depo. at 66. Additionally, the plaintiff was told by Charles Foster, her supervisor, that he had received a phone call that said "I have two of your employees on the docks having oral sex and I have it on tape." Plaintiff depo. at 86.

The plaintiff has settled all of her claims except for the claim for state law defamation against defendant Guardsmark.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.*

---

[2]Robert Osborne was a co-employee of plaintiff and the brother of plaintiff's husband. Osborne depo. at ¶¶ 3, 6.

*v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The

4

non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III. LEGAL ANALYSIS

To establish the tort of defamation, the plaintiff must show (1) a false *and* defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *Wal-Mart Stores, Inc. v. Smitherman*, 2003 WL 2007871 (Ala. May 2, 2003), citing *McCaig v. Talladega Publishing Co.*, 544 So.2d 875, 877 (Ala.1989).

The plaintiff here fails to set forth exactly whom she claims published the rumor about her to a third party. While the plaintiff asserts Guardsmark made such a communication, she seems to focus on Winston making repeated disclosures of the rumor in question to non-managerial employees of Site Services. However, she seeks to hold Guardsmark liable for then conducting an investigation as to the truth of the matter alleged. The plaintiff does not allege that Winston made her voluntary disclosures pursuant to this investigation.

For purposes of this opinion, the court assumes, without deciding, that the first element of defamation is met by the facts of this case. However, the plaintiff fails to

5

establish an **unprivileged** communication of the statement, by someone acting on behalf of Guardsmark, to a third person.

No dispute exists that Winston is employed by defendant Guardsmark and that she reported the allegation in question to her supervisor. Thereafter, although difficult to ascertain from the scant evidence before this court, defendant Guardsmark, through its supervisors, apparently communicated the rumor to Site Services for the purposes of letting the employer know what its employees were allegedly doing. *See e.g.*, plaintiff's objection at 4-5; defendant's brief at 9-10. Such a communication does constitute a publication to a third person by Guardsmark. However, such communication is privileged. *See e.g., Scrimsher v. Liberty National Life Insurance*, 655 So.2d 986 (Ala.1995).

> A communication may be conditionally privileged if it is one in which the party has an interest, and is made to another having a corresponding interest. More specifically, this Court has held that communications among employees in the course of transacting the company's business and in the proper scope of the employee's duties do not constitute a publication.

*Wyatt v. BellSouth*, 998 F.Supp. 1303, 1312-1313 (MD.Ala.1998); (quoting *Scrimsher v. Liberty National Life Insurance*, 655 So.2d 986 (Ala.1995)). As long as such a communication is made in good faith and without actual malice, it is privileged. *Willis v. Demopolis Nursing Home,* 336 So.2d 1117, 1120 (Ala.1976).

> The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.

*Hayes v. Wal-Mart Stores, Inc.*, 953 F.Supp.1334, 1341 (M.D.Ala.1996). Good faith is a defense to defamation when a defamatory statement is made pursuant to a qualified privilege. *Crutcher v. Wendy's of North Alabama*, 2003 WL 859255, *10 (Ala. March 7, 2003); citing *Atkins v. Ford Sales, Inc. v. Royster*, 560 So.2d 197 (Ala.1990). The plaintiff bears the burden of proving defamation with actual malice to prevail against a defense of qualified privilege, and the defendant does not bear the burden of proving good faith to establish such a defense. *Crutcher*, 2003 WL 859255, *10; citing *Ex parte Blue Cross & Blue Shield of Alabama*, 773 So.2d 475 (Ala.2000). The court finds that, in the facts before it, the communication in question was made without malice and in good faith.[3]

---

[3] While Winston may have made communications of the allegation with actual malice, Winston is not a party to this litigation. Malice includes defamatory statements made with reckless disregard to the falsity of a statement. *Barnett v. Mobile County Personnel Board*, 536 So.2d 46, 54 (Ala.1988). Here, the plaintiff relies on Robert Osborne, a "non-privileged" person, being told the rumor by Winston herself. Furthermore, the plaintiff does not assert Winston was acting with malice. Even assuming malice, simply because Winston is an employee of defendant Guardsmark does not impute liability to Guardsmark for Winston's conduct. Suffice it to say that, even given that Guardsmark is in the business of providing security services, and that investigating whether sexual misconduct occurred on its watch could be within the "line and scope of employment," the plaintiff has not alleged that Winston was acting on behalf of Guardsmark in reporting her allegations to anyone except her supervisor. As such, the plaintiff has failed to provide the court with any factual basis for defendant Guardsmark to be held liable for the alleged tortious act of Winston.

The court has also considered the various supervisors for defendant Guardsmark who were informed of the rumor pursuant to the investigation it undertook. The court finds these communications would not constitute publication. *See Hayes v. Walmart Stores, Inc.*, 953 F.Supp. 1334, 1339 (M.D.Ala.1996) (quoting *Burney v. Southern Railway Co.,* 276 Ala.637, 165 So.2d 726 (1964)).

## Conclusion

This court, having considered all of the evidence submitted by the parties, finds that the plaintiff fails in her burden to show any evidence sufficient to survive the defendant's motions for summary judgment. The court finds that, as a matter of law, the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248.

As such, the court being of the opinion defendant's motion for summary judgment is due to be granted, the court grants the defendant's motion for summary judgment by separate Order.

**DONE** this the ___25___ day of September, 2003.

                                                INGE P. JOHNSON
                                                UNITED STATES DISTRICT JUDGE